*1999 OK CR 3*

**Jim Ann HUSKEY and John Huskey, Appellants,**

v.

**STATE of Oklahoma, Appellee.**

Nos. F–97–1541, F–97–1548.

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1999.

Rehearing Denied Feb. 11, 1999.

Warren Gotcher, Gotcher & Belote, Mcalester, Oklahoma, for Appellants at Trial.

Greg Jenkins, Assistant District Attorney, W.A. Drew Edmondson, Attorney General of Oklahoma, Alecia A. George, Assistant Attorney General, for Appellee at trial.

Warren Gotcher, Gotcher & Belote, Mcalester, Oklahoma, for Appellants on appeal.

W.A. Drew Edmonson, Attorney General of Oklahoma, Alecia A. George, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## SUMMARY OPINION

CHAPEL, Presiding Judge:

¶1 Jim Ann Huskey and John Huskey were jointly tried by jury and convicted of Child Abuse in violation of 10 O.S.Supp.1995, § 7115, in the District Court of Bryan County, Case Nos. CR–96–423 and CR–96–424. In accordance with the jury's recommendation, the Honorable Willard Dreisel sentenced each co-defendant to life imprisonment and a fine of $5000. The Huskeys each appeal from this conviction and sentence. The appeals were consolidated by separate order.[1]

¶2 The Huskeys each raise five propositions of error in support of his or her appeal:

I. The trial court incorrectly instructed the jury as to the crime of lewd and indecent acts, a charge not plead or found at the preliminary hearing. By doing this [Huskey] was denied a fair trial. Furthermore the instruction as to lewd and indecent acts was incorrect as the court left out essential elements of that crime, all prejudicing [Huskey] and denying [him or her] a fair trial;

II. [Huskey] was denied due process and fundamental fairness when the court instructed the jury on a different charge than the charge in the information and charge that was the subject of the bind over at preliminary hearing;

III. The film of the child playing with anatomical dolls should not have been ad-

Mark A. Morrison, Phelps & Morrison, Durant, Oklahoma, for Defendant at Trial.

---

1. *Huskey v. State,* Nos. F–97–1541 and F–97–1548, orders not for publication (Okl.Cr. Nov. 24, 1998).

mitted, and the opinions of the experts concerning the same are inadmissible due to the scientific controversy over the use of anatomical dolls for diagnosis;

IV. The court should have sustained the demurrer to the evidence and there is a failure to sustain by evidence the allegations in the Information; and

V. The trial court committed numerous errors that denied [Huskey] fundamental fairness either individually or collectively and entitle [him or her] to a reversal.

■■■ ¶ 3 After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs and exhibits of the parties, we have determined that reversal is not required under the law and evidence. In reaching our decision we find in Proposition III that the DHS videotape of the victim was properly admitted, with sufficient particularized guarantees of trustworthiness, under the state of mind exception to the hearsay rule and as a statement of a child victim describing sexual conduct with a child.[2] We further find the State's expert witnesses gave appropriate opinion testimony and the trial court did not err in refusing to consider its admissibility as scientific evidence.[3] We find in Proposition IV that the trial court did not err in overruling the Huskeys' demurrer to the evidence, and sufficient evidence supported each conviction for child abuse.[4] We find in Proposition V that (1) the trial court did not err in denying the Huskeys' Motion to Suppress;[5] (2) trial counsel were not ineffective in pressing for a hearing on the Motion to Suppress or in preparation for trial;[6] (3) evidence of John Huskey's sexual approaches to another daughter were admissible to prove motive, intent, plan, and absence of mistake or accident[7] and did not prejudice Jim Ann Huskey;[8] (4) photographs of Jim Ann Huskey were relevant as evidence showed J.A.H. was present and awake at the time they were taken,[9] and these photographs did not prejudice John Huskey; and (5) the prosecutor neither misstated evidence nor engaged in improper argument.

■■ ¶ 4 Propositions I and II present questions of first impression, and we address them more fully. The Huskeys were charged under 10 O.S.Supp.1995, § 7115:

> Any parent or other person who shall willfully or maliciously engage in child abuse or neglect or who shall otherwise willfully

---

2. 12 O.S.1991, § 2803(3); 12 O.S.Supp.1995, § 2803.1; *Wisdom v. State*, 1996 OK CR 22, 918 P.2d 384, 393; *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990). The trial court also admitted the evidence under the residual exception to the hearsay rule, 12 O.S.1991, § 2803(24). Given the indicia of reliability and guarantees of trustworthiness, the Huskeys have not shown this decision was error. The record clearly reflects that although J.A.H. was not called to the stand she was available to testify if necessary. Since J.A.H. was available to testify, the requirements of revised 12 O.S.Supp.1995, § 2803.1 are met. This statute was revised in 1995 to replace former 22 O.S.1991, § 752, which contained a "manufactured hearsay" problem we found unconstitutional in *Burke v. State*, 1991 OK CR 116, 820 P.2d 1344. We need neither follow nor overrule *Burke* because § 752 was repealed, and the revision of § 2803.1 cured the constitutional problem present in the earlier statute. There is no confrontation problem and our decision does not conflict with previous cases in which a videotape was played when the child victim was unavailable for cross-examination. *Wisdom*, 918 P.2d at 393.

3. *Bartell v. State*, 1994 OK CR 59, 881 P.2d 92, 100–101; *Taylor v. State*, 1995 OK CR 10, 889 P.2d 319; *Daubert v. Merrell–Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

4. *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202, 203–204. As John Huskey presented evidence after his demurrer was denied, we analyze his claim as one of insufficiency of the evidence.

5. *Fletcher v. State*, 1986 OK CR 163, 735 P.2d 1190, 1198.

6. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993);*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

7. 12 O.S.1991, § 2404(B); *Burks v. State*, 1979 OK CR 10, 594 P.2d 771, 774–75, overruled in part on other grounds by *Jones v. State*, 772 P.2d 922 (Okl.Cr.1989).

8. The trial court instructed jurors to consider evidence only against the defendant it concerned when the evidence was presented and again at the close of trial.

9. 12 O.S.1991, § 2404(B); *Burks*, 594 P.2d at 774–75.

or maliciously injure, torture, maim, use unreasonable force upon a child under the age of eighteen, or sexually abuse, sexually exploit or otherwise abuse or neglect such child, or who shall cause, procure or permit any of said acts to be done, shall upon conviction [be punished by up to life imprisonment and a $5000 fine]. [Provisions the trial court found applicable are in italics.][10]

The Information specified that the particular form of abuse charged was mental injury through exposure to explicit adult sexual conduct and acts, and by failure to prevent the same. Thus the State ultimately charged, and had to prove, that J.A.H. suffered mental injury due to or as a result of the Huskeys' acts. The descriptive language contains a reasonable account of the evidence in this case but does not precisely track the language of any existing sexual abuse statute. It is most similar to the crime codified as lewd or indecent acts.[11]

¶ 5 The trial court determined that the italicized statements above applied to the charges and evidence. The trial court noted the absence of case law on the amended § 7115 and determined that the statute created three ways to accomplish child abuse: (1) torture, etc. (not applicable here); (2) sexual abuse; and (3) sexual exploitation. The court noted the latter two were defined in the child abuse reporting and prevention act[12] and found the State charged and pre-

sented sufficient evidence to support either sexual abuse or sexual exploitation. Consequently, the trial court determined it was appropriate to include instructions on sexual abuse and sexual exploitation.[13] Lacking a standard jury instruction for sexual exploitation, the trial court created Instructions 10 and 11 from § 7115 and the definitions in § 7102(B). Further definitions were taken from the statute and Oklahoma Uniform Jury Instructions—Criminal (2nd) 4–139 (OUJI–CR (2nd)). The jury was also instructed that child abuse could be accomplished by sexual abuse or sexual exploitation. The Huskeys do not challenge these instructions on appeal.

¶ 6 In Proposition I the Huskeys complain about Instruction 9, regarding sexual abuse. The standard OUJI instruction on sexual abuse, 4–36, has as the third element "[Specify Particular Allegation of Sexual Abuse]." Thus the trial court was required to determine which particular sexual abuse crime the Information and evidence most resembled. The court reasonably concluded that the Information charged the Huskeys with exposing J.A.H. to explicit adult sexual activity, and the evidence showed they had willfully permitted J.A.H. to look at several adults' private parts and sexual acts performed in the child's presence, and had looked upon, touched or felt J.A.H.'s body in a lewd or lascivious manner, for their own

10. This statute was renumbered and amended in 1995. The previous statute, 21 O.S.1991, § 843, read: "Any parent or other person who shall willfully or maliciously injure, torture, maim, use unreasonable force upon a child under the age of eighteen, or sexually abuse such child, as those terms are defined by Section 845 of this title or who shall cause, procure or permit any of said acts to be done, shall [be punished]." This amendment broadens the range of acts punishable as child abuse. The scope and application of the amended statute appear to have generated severe confusion in this case.

11. 21 O.S.1991, § 1123.

12. "Sexual abuse" includes rape, incest and lewd or indecent acts or proposals by a person responsible for the child's welfare. 10 O.S.Supp.1995, § 7102(B)(5). "Sexual exploitation" includes allowing, permitting, encouraging, or engaging in the lewd, obscene or pornographic photographing, filming, or depicting of a child by a person responsible for the child's welfare. 10 O.S.Supp.

1995, § 7102(B)(6). Before promulgation of the Oklahoma Child Abuse Reporting and Prevention Act, this Court had held that these definitions in the reporting statutes on child abuse and neglect did not apply to the crime codified in § 845. *Atterberry v. State*, 1986 OK CR 186, 731 P.2d 420. The recodification, in which the crime of child abuse is contained within the same Title and Chapter as the definitions, compels us to reexamine this holding. It is appropriate to refer to the definitions in § 7102 when discussing § 7115.

13. Regarding the "otherwise abuse or neglect" phrase, the trial court found that this in itself did not "sufficiently define a criminal activity to warrant an instruction" since the Court would have to fashion an instruction based on the evidence and leave it up to the jury, and thus refused the State's request to specifically instruct on "otherwise abuse or neglect."

sexual gratification. The court determined that the third element of the instruction on sexual abuse should specify the elements of lewd and indecent acts.[14] Instruction 9 reads:

No person may be convicted of a[sic] child abuse by sexual abuse of a child unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, Willful or malicious;

Second, Causing, procuring or permitting;

Third, Lewd or Indecent Acts;

Fourth, Upon a child under the age of eighteen;

Fifth, By a person responsible for the child's welfare.

In order to satisfy the third element of Lewd or Indecent Acts, the State must prove each element of either A or B below beyond a reasonable doubt:

A. (1) The defendant looked upon, touched or felt;

(2) The body or private parts of the child;

(3) In any lewd or lascivious manner; OR

B. (1) A child under sixteen years of age;

(2) To look upon the private parts of another person or sexual acts performed in the child's presence;

(3) For the purpose of sexual gratification;

(4) In a lewd and lascivious manner.

The words "lewd" and "lascivious" have he [sic] same meaning and signify conduct which is lustful and which evinces an eagerness for sexual indulgence.

¶ 7 The Huskeys requested an alternative instruction on the elements of "abuse or neglect" by willfully or maliciously causing or allowing mental injury by exposing a child to explicit adult sexual acts and conduct, and failure to protect the child from the same, tracking the language in the Information.

This is headed "OUJI–CR 422 (Modified)" and appears to combine the OUJI–CR (2nd) instructions on sexual abuse and neglect of children. The trial court refused this request and instructed on the elements of the crimes actually charged in the Information. The Huskeys have not shown this decision was an abuse of discretion.

¶ 8 On appeal, the Huskeys generally disagree with Instruction 9 and complain about the specific elements included for "lewd or indecent acts." The Huskeys are apparently confused about the crime charged. The type of child abuse charged under § 7115 is most similar to "lewd or indecent acts" but this does not mean the jury was instructed on the latter crime, nor were the Huskeys convicted of it. The crime of sexual abuse punishes persons who engage, cause, procure or permit child abuse as otherwise defined.[15] There is no element of force. The crime of lewd or indecent acts punishes those who "force or require" a child to look upon others' private parts or sexual acts.[16] Over objection, Instruction 9 did not include "force or require" in the elements of "lewd or indecent acts," the third overall element of sexual abuse. The Huskeys claim this lessened the burden of proof by providing an incomplete list of elements for the specific charge of lewd acts. They argue that if the trial court intended to instruct on lewd acts as set forth in § 1123, then it should have given all the elements of that crime. The trial court considered this argument and concluded that the Legislature specifically intended the § 7115 crime of child abuse, when accomplished through lewd or indecent acts, to include "allowed or permitted," rather than include the "force or require" element; i.e., the trial court concluded the Legislature deliberately relaxed the requirements of § 1123 by amending § 7115. The State does not discuss this conclusion, simply claiming that as the trial court correctly instructed on the elements of § 7115, and did not instruct on § 1123 as a separate

---

14. 21 O.S.1991, § 1123(A)(2 or 4)(5).

15. 10 O.S.Supp.1995, § 7115 and OUJI–CR (2nd) 4–36.

16. 21 O.S.1991, § 1123(A)(5), OUJI–CR (2nd) 4–129.

crime, it was not necessary to include all the elements of § 1123.

■ ¶ 9 The State's response begs the question, but the trial court's reasoning is correct. We will not presume the Legislature to have done a vain thing. When it amended the child abuse statute and included it in the revised Oklahoma Child Abuse Prevention and Reporting Act,[17] the Legislature specifically criminalized "child abuse or neglect" done by torture (etc.), sexual abuse, sexual exploitation, or other abuse or neglect, or when a parent or other person causes, procures, or gives permission to do the same. This significantly expanded the scope of the child abuse statutes, which formerly punished only torture (etc.) or sexual abuse. "Sexual abuse" includes rape, incest and lewd or indecent acts.[18] The uniform instruction for § 7115 gives the elements of sexual abuse, which include the element of causing or procuring as specified in the statute.[19] No matter what the underlying particular allegation of sexual abuse, the crime as defined in § 7115 has no "force or require" element. The defendant need only have caused or procured the abuse in question. Without this distinction, the amendments to § 7115 appear pointless: if the State must allege and prove the elements of lewd and indecent conduct in order to convict a parent of child abuse under § 7115, why not simply require it to charge the crime under § 1123? The Legislature evidently intended § 7115, child abuse, to be a separate crime encompassing activity already prohibited by other statutes. This is apparent from the lack of any element of force, no matter what the underlying activity, and the imposition of a separate punishment which may be greater than that imposed by statute on any individual form of sexual abuse or exploitation. While a court may not change the elements of any given crime, certainly the Legislature may do so. The trial court correctly determined that § 7115 has no "force or require" element and denied the Huskeys' request to so instruct.[20] Proposition I is denied.

■ ¶ 10 In Proposition II, the Huskeys claim they were denied due process when the jury was instructed on a crime not charged in the Information. On the contrary, the jury was not instructed on the crime of lewd and indecent acts, and they were not convicted of that charge. The jury was instructed on the crimes of sexual exploitation and sexual abuse, which are specifically included in § 7115. There can be no credible claim that the Huskeys had no notice of the charges against them. They were charged with child abuse under § 7115 by causing mental injury through exposing J.A.H. to explicit adult sexual activity. In common English, this means at the least they allowed the child to watch adults having sexual intercourse. Even without the evidence at the preliminary hearing (which should have cleared up any confusion) the Information told the Huskeys in ordinary language what they must be prepared to meet.[21] The instructions on sexual exploitation and sexual abuse by lewd and indecent acts neither added charges nor changed the nature of the charges the Huskeys had to defend against.[22] Rather, they accurately explained to the jury the law governing § 7115. Proposition II is denied.

■ ¶ 11 In summary, the crime of child abuse, as defined in 10 O.S.Supp.1995, § 7115, does not include any element of "force or require." This is true even where the underlying criminal conduct, standing as a separate crime, would have that element. Criminal conduct which may be charged and punished under § 7115 includes (1) willful or

17. Title 10, Chapter 71 (O.S.Supp.1995).

18. 10 O.S.Supp.1995, § 7102(B)(5). The definition is not limited to these crimes.

19. OUJI–CR(2nd) 4–36.

20. This discussion disposes of the Huskeys' argument under (*Bannister v. State*, 1996 OK CR 60, 930 P.2d 1176, and *Hockersmith v. State*, 1996 OK CR 51, 926 P.2d 793). As "force or require"

is not an essential element of § 7115, the trial court did not err in failing to instruct on it.

21. *Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 986–87.

22. Counsel's suggestion to the jury in closing argument that the trial court had "changed the nature of what [the jury] must consider" was shockingly inappropriate.

malicious injury, torture, maiming, or use of unreasonable force; (2) sexual abuse; (3) sexual exploitation; (4) other abuse or neglect; and (5) the causing or procuring of the same. Sexual abuse includes rape, incest and lewd or indecent acts, which may or may not involve physical contact. Sexual exploitation includes use of children for prostitution, or lewd, obscene or pornographic filming, photography, or depiction of children. Based on the Information and evidence, the trial court correctly instructed the jury on the crime of child abuse through sexual abuse by exposure to lewd and indecent acts, as well as sexual exploitation. The Information sufficiently told the Huskeys they had to defend against this charge.

¶ 12 The confusion in this case stemmed in part from the lack of a specific instruction on the crime of sexual abuse of a child, incorporating the elements of § 7115. In future cases charged under § 7115 the following instruction should be used:

### SEXUAL ABUSE OF CHILDREN— ELEMENTS

No person may be convicted of sexual abuse of a child unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **willful/malicious**;

Second, **causing/procuring/permitting**;

Third, [injury, torture, maiming or use of unreasonable force]; **OR** [sexual abuse]; **OR** [sexual exploitation]; **OR** [other abuse or neglect];

Fourth, **upon/to** a child under the age of eighteen;

Fifth, by a person responsible for the child's health or welfare.

¶ 13 This instruction is intended for crimes charged under 10 O.S.Supp.1995, § 7115. The crimes included in the third element are defined in 10 O.S.Supp.1995, § 7102(B). Trial courts may instruct on the statutory definitions of particular allegations of sexual abuse or exploitation, e.g. lewd and indecent acts (21 O.S.1991, § 1123). However, § 7115 contains no element of "force or require" and demands only that the defendant have caused, procured or permitted the

act in question. OUJI–CR (2nd) 4–35 should be used if the defendant is charged with beating or injuring a child.

### Decision

¶ 14 The Judgments and Sentences of the District Court are **AFFIRMED**.

STRUBHAR, V.P.J., and JOHNSON, J., concur.

LUMPKIN, J., and LANE, J., concur in results.

LUMPKIN, Judge, concurs in result.

¶ 1 I concur in the Court's decision to affirm the judgments and sentences in these cases. However, I disagree with the Court's analysis as it relates to 12 O.S.Supp.1995, § 2803.1.

¶ 2 This Court has previously found the use of "manufactured hearsay", which was created pursuant to the procedures set out in 22 O.S.Supp.1986, § 752, to be unconstitutional. See *Burke v. State*, 1991 OK CR 116, 820 P.2d 1344, cert. denied, 504 U.S. 973, 112 S.Ct. 2940, 119 L.Ed.2d 565 (1992). As I stated in my separate writing in *Burke*,

The issue in this case requires the Court to review 22 O.S.Supp.1986, § 752 and 12 O.S.Supp.1986, § 2803.1. Section 2803.1 is the enactment of a specialized hearsay exception within the Oklahoma Evidence Code. Section 752, in effect, enacts a procedure for manufacturing hearsay testimony without the right of confrontation which was afforded in Section 753. If Section 752 could withstand constitutional scrutiny it would potentially subvert the protections provided in Section 753 as applied in Shipman. It would in effect be an ex parte deposition which could deny persons charged with a crime the right of confrontation of their accusers.

*Id.* at 1350. (Lumpkin, V.P.J. specially concurring). I do not believe this Court should interpret 12 O.S.Supp.1995, § 2803.1 in such a manner as to condone a procedure we determined unconstitutional in *Burke*.

¶ 3 In this case, the video, while an attempt to elicit a statement from this three and one-half (3 1/2) year old girl, was in fact

a documenting of her role-playing and acting out with anatomically correct dolls. It is truly disturbing that degenerate activities on behalf of the child's parents apparently caused her to act out with the dolls the sexual acts she had been accustomed to seeing in her home. However, it is an activity which definitely would not have been allowed in the courtroom, especially when we must note those individuals in attendance with the child victim allowed her to undress the anatomically correct dolls and then completely undress herself and in her state of nakedness, proceed to act out sexual acts before the camera.

¶ 4 In *Bartell v. State,* 881 P.2d 92, 99–100 (Okl.Cr.1994) Court set out the analysis for determining whether the use of a statement taken under Section 752 and played to the jury could be harmless error. In *Bartell,* the child victim testified relating the events of the offense during trial and the interview taped pursuant to Section 752 was played. That same analysis is applied in this case. While the child victim was not called to testify in this case, the trial judge determined she was available. In light of the substantial third party testimony establishing the commission of this offense by the appellants, I would find the use of the video tape by the State to be harmless under the *Bartell* analysis. While the tape was admitted in violation of our decision in *Burke,* its use by experts in their evaluation and as a basis for the forming of their opinion was not error. However, as we set out in *Davenport v. State,* 806 P.2d 655, 659 (Okl.Cr.1991), the expert's scope of testimony is to lay out for the trier of fact the nature and criteria for determining whether or not sexual abuse had occurred.

¶ 5 I disagree with the Court's interpretation that the video tape was admissible pursuant to 12 O.S.Supp.1995, § 2803.1. Section 2803.1 was originally codified by Laws 1984, c. 8, § 1, Emergency Effect March 12, 1984. Subsequently, it was amended by Law 1986, c. 87, § 1, Operative July 1, 1986. Section 752 was enacted by Laws 1986, c. 87, § 4, Operative July 1, 1986. Section 752 specifically dealt with the subject of the ad-

missibility of a recorded statement of a child twelve (12) years of age or younger, while Section 2803.1 addressed statements of children twelve (12) years or younger describing acts of physical abuse or sexual contact. Since Section 752 specifically dealt with the admissibility of recorded statements, I would find it logical to interpret Section 2803.1 as not having applicability to recorded statements. To attempt to expand Section 2803.1 to include that which has been found unconstitutional in *Burke,* is to dilute the credibility of past decisions of this Court. Therefore, we should be consistent with the analysis set out in *Burke* and apply the methodology described in *Bartell* to find the error which was created by the admission of this video tape to be harmless. I find the guilt of the Appellants conclusively proven beyond a reasonable doubt by the other admissible evidence presented during the course of the trial and find it did not impact the verdict of guilt in these cases.

LANE, Judge, concurs in results.

¶ 1 I disagree with the majority in the manner that it resolves Proposition III, the issue of the admission of the video tape of an interview with the victim.

¶ 2 If we were to follow our prior reasoning in *Burke v. State,* 1991 OK CR 116, 820 P.2d 1344 we must reverse this case. Therein, we found then 22 O.S.1981, § 752 to be unconstitutional because it authorized the admission of such a tape in violation of a defendant's right of confrontation. I acknowledge that because of this case the legislature repealed § 752. However, the reasoning used in *Burke* would apply to the admission of the tape whether it is admitted under § 752 or any other section of the evidence code.

¶ 3 I cannot agree that the majority can justify admission of the tape under the state of mind exception to the hearsay rule. The video does not state what was in the mind of the victim at the time of the incident. Its most damaging content is the depiction of the child playing with the dolls. It is very graphic and prejudicial.[1]

---

1. I would find that the fact that it is prejudicial does not make it per se inadmissible because I

believe that the probative value of the tape exceeds the prejudicial effect.

¶ 4 However, I would agree with the majority that it is admissible under 12 O.S.1991, § 2803.1. This section allows controlled admission of statements made by a child of abuse on the victim. This is consistent with my dissent in *Burke*. This Court and the Oklahoma Supreme Court have both found this statute to be constitutional.[2] The fact that the statement is memorialized by a video recording should enhance its admissibility. In *Williams v. State*, 93 Okl.Cr. 260, 226 P.2d 989, 995 we found that the use of the talking motion picture machine the phonograph, the dictaphone and similar recording devices to record confessions are admissible in evidence. The reasoning is that they give a truer representation of the statement than an oral recitation of the words by a witness or even a statement taken by a court reporter and signed by the defendant. The same reasoning and rule should also apply to this type of statement. I would overturn *Burke* and rule that the recording is admissible under the authority of § 2803.1.

---

**2.** *Jones v. State*, 1989 OK CR 66, 781 P.2d 326; *Matter of W.D.*, 1985 OK CR 65, 709 P.2d 1037.